## STARRETT v. ATHOL MACHINE Co. and others.

*(Circuit Court, D. Massachusetts. January 31, 1883.)*

1. MANUFACTURING—PARTNERSHIP—INFRINGEMENT OF PATENT—RESPONSIBILITY.
    Where a manufacturing company and a firm entered into a contract, by which the former let out to the latter all the power, machinery, etc., of the company, to be used for the manufacture of tools, and for carrying on the business of the company agreed to be done by the latter parties in co-operation with the directors, the firm agreeing to pay as rent 10 per cent. of their net sales, the profits of the consolidated company to be shared in certain proportions, *held*, that the manufacturing company are not responsible for the manufacture of trysquares complained of, made by the firm for its own use in the rented premises.

2. SAME—LANDLORD—INJUNCTION.
    May a landlord be enjoined from permitting his tools and machinery to be used for the injury of a third person? *Quære.*

3. PATENTS FOR INVENTIONS—TRY-SQUARES.

> An improvement in try-squares, which produces a tool more convenient, with a larger capacity, and more accurate, by adding to such a tool a slot in one of the arms, is a patentable invention.

4. SAME—REISSUE—VALID IN PART.

> Whether a reissue is wholly valid or not, it may be valid to the extent that claims in the original and in the reissue are alike; and if those claims are infringed, an injunction may be granted.

In Equity.

*George D. Noyes*, for complainant.

*Wm. Edgar Simonds*, for defendants.

LOWELL, C. J. This suit for the infringement of two patents for improvement in try-squares, is brought against the Athol Manufacturing Company, a corporation established under the laws of Massachusetts, and George T. Johnson, joined as president of the company, together with Daniel A. Newton and Stephen H. Bellows, who, it seems, are copartners in the making of tools under the firm of the Standard Tool Company. The defendants deny that the Athol Company has anything to do with the tools which have been made and sold in supposed infringement of the plaintiff's rights. They produce in evidence a contract between the company and the firm of Newton and Bellows, by which the former let out to the latter all the power, machinery, etc., of the company, to be used for the manufacture of tools, and for carrying on the business of the company, which Newton and Bellows agree to do in co-operation with the directors. Newton and Bellows agree to pay, as rent, 10 per cent, of their net sales; and, as to the business of the company, the profits are to be shared in certain proportions between them and the company. This contract, if I understand it, is in reality two contracts,—one for the hire of machinery, etc., and the other for a sort of partnership. The defendants say that the tools complained of were made by Newton and Bellows for themselves, under the first part of the contract, and not as part of the business of the company. If so, I do not see that the company are accountable. Newton and Bellows are directors in the company, and the agreement, in so far as it makes, or purports to make, a sort of partnership between the parties, may be illegal and *ultra vires;* but that does not affect the question whether the Athol Company make these try-squares. The fact that they receive 10 per cent. of the net sales by way of rent, does not give them such an interest in the try-squares, or in the business, that they are responsible for the profits of the manufacture. The plaintiff insists that the whole contract is a device to shield the Athol Company as infringers. But this is not

proved. There is, however, some evidence tending to show that the company have made tools for the express purpose of manufacturing these try-squares, and, perhaps, that they made a few of the squares before the contract with Newton and Bellows went into effect. Besides, I am not sure that a landlord may not be enjoined from permitting his tools and machinery to be used for the injury of a third person; at least, if he has any power to prevent it. I think an injunction should go against all the defendants; but when it comes to the accounting, the plaintiff must prove before the master that the company is liable to him in profits or damages, under the risk of what the court may order concerning costs.

The first patent which I shall consider, second in order of time, is No. 229,283, dated June 29, 1880. The patentee says, in his specification:

"The try-square hereinafter described is not only to be used as an ordinary try-square, but can be employed for determining the center of a circle. * * * In carrying out my said improvement, I construct or provide the head with two arms, a, b, of equal length, rigidly connected, and arranged with their inner surfaces straight and at a right angle to each other; and I form in the head and through one of the arms, midway between its opposite edges, a slot, c, to receive the ruler or slide-bar; such slot being arranged so as to cause the upper edge of the ruler or slide-bar, when against the upper edge of the slot, to stand at an angle of 45 degrees with the inner face of the two arms."

He then describes the movable head, and the clamping devices, and the manner of using the instrument.

The first claim is substantially like the third, and these are infringed:

"(1) The head not only provided with arms of equal length, and being rigidly connected with each other, or in one piece with the body of such head, and arranged with their inner faces at a right angle, but having in its body and through one of such arms, and midway, or essentially so, between its opposite edges, a slot to receive a rule or slide-bar, such slot terminating at one end of it, at the vertex of the angle of the two arms, and being made through an arm of solid stock, to give a working face that will allow either side to be laid down, all being substantially as set forth."

The state of the art is that the earlier patent of the plaintiff contains the movable head, rule, and clamping devices precisely like those in this patent, but with only one arm; and that try-squares with two arms had been made before, but not provided with a slot through one of the arms. The question is whether the change is patentable. There seems to be no doubt that the plaintiff's tool is more convenient, that it has a larger capacity, and, perhaps, a little

more accuracy, from the arrangement of carrying the rule through a slot in one arm, than any which are proved to have preceded it. Its convenience is obvious on inspection. The plaintiff's expert considers that there is invention in this; that is, that a mechanic would not, from mere knowledge and skill, construct a try-square in this way, having the older forms before him. The defendants' expert says that nothing has been done but to duplicate the parts of older try-squares. He means, I suppose, that any mechanic would make this duplication in this way; for it is not true that it is a mere duplicate; it is one *plus* a slot. I am of opinion that this change involved invention.

Like questions arise under the other patent, which is reissue No. 9,419. The defendants have copied the plaintiff's tool, but they deny patentability, and that the reissue, which was taken out about 19 months after the original, is valid. The defendants own the patent of one Chaplin, on which they have sued the plaintiff, as I understand; and there is no doubt that the plaintiff's tool gets many of its best features from Chaplin's patent, and from tools and drawings which were lent him by Chaplin. Whether the reissue of Chaplin is valid, and whether the plaintiff infringes it, are questions which have no bearing on this case.

It is not easy to describe the differences between these tools intelligibly without the drawings. The changes which the plaintiff has made are (1) in changing the form of his "stock" so that it has a rectangular base so broad that the clamp-screw which slides on the rule or bar is wholly within the stock, and protected by it from dirt and wear, and from falling out; (2) a pin through the top and clamping screw, which keeps it from turning round when not clamped; (3) the groove of the bar has a rectangular shape in cross section, instead of a slightly-beveled face; (4) the spirit-level is placed inside the stock, instead of being firmly attached to it, as in one of Chaplin's exhibits. The third and fourth appear to me to be changes of form, without changes of function or mode of operation, and not to be patentable. The first and second I consider to be patentable improvements in the tool, though not of great apparent difficulty.

Whether the reissue is wholly valid or not, it is so to the extent that claims in the original and in the reissue are alike and have been infringed. *Gould* v. *Spicer*, C. C. R. I., August, 1882. The original patent, No. 215,024, seems to me to explain the improvements clearly enough: "The working edges, *c, e,* of the stock are placed far

enough apart for the bottom upper edge of the bar recess to be long enough to afford a suitable bearing for the bar, and also to admit of the boss being made between them, whereby the clamp is not only covered and protected on all sides and sheltered from dirt and extraneous matters, but is prevented from accidentally slipping sidewise out of the groove of the bar." Following an identical clause in the reissue, there is another which enlarges on the same subject, showing certain additional advantages of this feature of the invention, but it adds nothing to the description of the tool itself. The original patent claims: "(1) The stock provided with the bar-receiving recess and boss, as described, and with the clamp arranged in such recess and boss substantially as set forth." This covers the ground, and is like claim 6 of the reissue, which, therefore, I hold to be valid, and to have been infringed.

Interlocutory decree for complainant.